UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT J. MCMAHON,

        Petitioner,                                    Case Number: 2:16-CV-12878
                                                         HONORABLE NANCY G. EDMUNDS

v.

JODI DeANGELO-KIPP,

        Respondent.
                                         /

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Robert McMahon, currently in the custody of the Michigan Department of Corrections, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his convictions for bank robbery, Mich. Comp. Laws § 750.531, and two counts of armed robbery, Mich. Comp. Laws § 750.529, for which he is serving three concurrent sentences of 126 months to 20 years' imprisonment. He raises a single claim for relief: his Fifth Amendment right to counsel was violated by the admission into evidence of his statements to police made after he invoked his right to counsel. For the reasons explained below, the Court denies the petition.

### I. Background

This case arises from a robbery at the Genesis Credit Union in Waterford Township on July 10, 2010. Caterri McCleery and Jennifer Hanson were working as tellers that day. Caterri McCleery testified that, at about 10:00 a.m., a man wearing a

black mask and sunglasses and carrying a gun entered the bank. 10/25/10 Tr. at 34. The man approached McCleery's teller window, told a customer standing at the window to leave, threw a bag at McCleery and demanded she fill it with money. *Id.* at 34-35. He also ordered all of the other customers out of the bank. *Id.* at 35. McCleery told him that she did not have any money because her teller drawer was at the drive-through window. *Id.* at 35-36. He asked for her personal money. She told him that she did not have very much, but that her purse was locked up by the drive-through window. *Id.* at 41.

The man then took the bag away from McCleery and gave it to another teller, Jennifer Hanson, telling her to give him money. *Id.* at 36. He still had his gun in hand and showed Hanson that he also had a box cutter. *Id.* at 38. Hanson told the man that she did not have a cash drawer and was using a cash dispenser unit, which was on a time lock. *Id.* He then asked her for her personal money. *Id.* Hanson told the man that she did not have her purse with her. *Id.*

The man was enraged that no one in a bank seemed able to give him any money. *Id.* at 39. McCleery told him that she could get money from her cash drawer at the drive-through window. *Id.* She walked to the window and put about $1,700 in the bag. *Id.* The man then left the bank.

Jennifer Hanson's testimony was consistent with McCleery's. Hanson testified that the robber asked for personal money from Hanson and McCleery, and that, ultimately, McCleery retrieved cash from the drive-through window and gave it to the robber.

Deborah Giles was using a drive-through automatic teller machine at the Genesis Credit Union at the time of the robbery. While using the ATM, she became aware the credit union was being robbed. *Id.* at 18-19. Giles saw a young man exit the bank, carrying a bag and wearing a hoodie. *Id.* at 20. Giles followed the man in her vehicle. At the end of an alley, she saw a red vehicle, but no man. She presumed he got into the red vehicle and followed that vehicle. *Id.* at 22-25. When she caught up to the vehicle, she saw the driver was a female with a ponytail. She also saw that someone was hunched down in the back seat. *Id.* at 27. Giles recorded the license plate number and provided it to the police. *Id.* at 30.

Kip Quarton testified that, on July 10, 2010, at approximately 10:30 a.m., Petitioner called him asking to be picked up. *Id.* at 183. Petitioner told Quarton that he had money with which to repay Quarton for a past debt. *Id.* When Quarton picked up Petitioner, Petitioner told Quarton that he had just robbed a bank and gave Quarton $50. *Id.* at 184-85.

Waterford Police Department police officer Matt Reid testified that he responded to the report of a robbery at the credit union. After following leads related to the license plate number reported by Giles, Officer Reid observed Petitioner walking down a street in Waterford. *Id.* At 147-48. Officer Reid handcuffed Petitioner and found a large amount of cash in Petitioner's pocket. *Id.* at 148-150. The cash totaled $1,714. *Id.* at 150. Police learned that Petitioner had been near a business called Michigan Court Services. Police Officer Christopher Metikosh testified that he looked in a dumpster near that

business and found a knit cap, hoodie, a pair of pants, and what appeared to be a Beretta 9 mm handgun. Officer Metikosh testified that the gun appeared real, although it was not.

Police detective Gregory Drumb testified that he interviewed Petitioner after his arrest. He testified that, after Petitioner was advised of his rights under *Miranda*, Petitioner confessed to robbing the bank.

Petitioner testified in his own defense. He admitted intending to rob the bank, but denied demanding personal property from either of the tellers. He theorized that McCleery and Hanson were mistaken in their testimony because the day was so stressful for them.

Petitioner was convicted of bank robbery and two counts of armed robbery. On November 24, 2010, he was sentenced to 126 months to 20 years for each of his three convictions.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising four claims for relief, including the Fifth Amendment claim raised in the pending habeas petition. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. McMahon*, No. 302037, 2012 WL 3020391 (Mich. Ct. App. July 24, 2012). The Michigan Supreme Court denied leave to appeal, *People v. McMahon*, 493 Mich. 930 (Mich. Jan. 25, 2013), and denied reconsideration. *People v. McMahon*, 494 Mich. 873 (Mich. June 25, 2013).

Petitioner filed a motion for relief from judgment in the trial court, raising claims unrelated to the claim raised in this petition. The trial court denied the motion. *See*

12/12/2014 Order, *People v. McMahon*, No. 10-233010, ECF No. 7-13. The Michigan Court of Appeals denied leave to appeal, *People v. McMahon*, No. 327879 (Mich. Ct. App. July 29, 2015), as did the Michigan Supreme Court. *People v. McMahon*, 499 Mich. 927 (Mich. 2016).

>Petitioner then filed this habeas corpus petition, raising a single claim for relief:
>
>The trial court violated McMahon's constitutional rights by admitting his statements to police where they were obtained in violation of his Fifth Amendment right to counsel.
>
>Respondent has filed an answer in opposition and the relevant state court records

and transcripts.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

>(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous ... The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102-03(internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011). Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.*

### III. Discussion

Petitioner argues that his Fifth Amendment right to counsel was violated when the trial court admitted into evidence his custodial statements which, he claims, were made after he unequivocally invoked his right to counsel.

The Fifth Amendment, which is made applicable to the states by the Fourteenth Amendment, protects an accused from compulsory self-incrimination. In *Miranda v. Arizona*, the Supreme Court held that this prohibition against compelled self-incrimination requires that a custodial interrogation be preceded by advice that the putative defendant has the right to an attorney and the right to remain silent. 384 U.S. 436, 479 (1966). The Court further held that if the putative defendant invokes his right to counsel, "the interrogation must cease until an attorney is present." *Id.* at 474.

In *Edwards v. Arizona*, the Supreme Court "reconfirm[ed]" the rule established in *Miranda*, that, when a suspect has invoked the right to have counsel present during custodial interrogation the suspect may not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. 477, 484-85 (1981). Further, after a suspect has invoked his right to counsel, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484. This rule "is designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights." *Davis*, 512 U.S. at 458 (internal quotation omitted).

8

A suspect need not "speak with the discrimination of an Oxford don," but must be unambiguous. *Id.* at 459. This means that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. Officers have no obligation to stop questioning a suspect if the "suspect's statement is not an unambiguous or unequivocal request for counsel." *Id.* at 452.

Petitioner filed a motion to suppress his confession on the ground that is was involuntary because he was beaten by the officers who took him into custody and therefore intimidated into giving the confession. He did not move to suppress on the ground raised in this petition, that is, that police improperly continued to question him after he invoked his right to counsel. After conducting an evidentiary hearing pursuant to *People v. Walker*, 374 Mich. 331 (1965)[1], the trial court held that Petitioner's will was not overborne, he understood his rights, and the officers did not threaten or coerce Petitioner and denied the motion to suppress. *See* 9/22/2010 Tr. at 6-9.

On appeal to the Michigan Court of Appeals, Petitioner argued, inter alia, that his confession was improperly admitted because police continued to question him after he invoked his rights to counsel and to remain silent. Petitioner maintained that he invoked his right to counsel on three separate occasions:

> Petitioner: All right, so I guess the whole point is, ... being in college that I should call my lawyer right now, right?

---

[1] *People v. Walker*, 374 Mich. 331 (1965) requires that an evidentiary hearing be conducted when a defendant challenges the admissibility of a confession.

> Officer #1: That's a decision that you had to make.
>
> Officer #2: Only you can do that.

8/25/2012 Tr. at 230.

> Petitioner: I need to – can I call my lawyer?
>
> Officer #1: You can if you want.
>
> Officer #2: If you want one, you tell us and then we're done talking.

Id. at 232.

> Officer: The rules are real simple, Rob, the man read you your rights. You have the right to remain silent at any time. You can at any time tell us a portion of the truth, tell us you're not talking at all and you want to speak to an attorney before you do, or you can waive that right, which you did, but you can re-invoke that at any given time.
>
> Petitioner: All right, I'm thinking I want to talk to — (undecipherable). I think my lawyer – it's Saturday, I don't even know if we'll be able to get ahold of him.
>
> Officer: That's fine.
>
> Petitioner: This is ridiculous. What's my bond []?
>
> Officer: You don't have bond, not til the Judge sets it.

*Id.* at 233-34.

The Michigan Court of Appeals reviewed the trial court's decision under the proper standard and held that Petitioner did not unambiguously invoke his right to counsel:

> In this case, we find that defendant did not unequivocally invoke his right to counsel. Instead, he made ambiguous references to an attorney "that a reasonable officer in light of the circumstances would have understood only

10

> ...." as being that defendant might be invoking the right to counsel. Davis, 512 U.S. at 458-460. Specifically, in his first reference to an attorney, defendant stated, "being in college ... I should call my lawyer right now right?" This reference was a question regarding counsel, as opposed to an unequivocal request to speak with an attorney. Similarly, the second time that defendant referenced an attorney, he merely asked if he could call his lawyer, stating, "I need to—can I call my lawyer?" The detective responded by explaining that defendant could call an attorney if he wanted to and stated "If you want one, you tell us and then we're done talking...." Defendant responded by trying to negotiate with police, and he did not unequivocally state that he wanted to speak with an attorney. Finally, defendant stated, "I'm thinking I want to talk to ... I think my lawyer ..." and then changed the subject and started talking to police about his bond. We conclude that defendant did not invoke his right to counsel under the Davis standard.

*McMahon*, 2012 WL 3020391 at *6.

The Michigan Court of Appeals decision' was not unreasonable. In *Davis v. United States*, 512 U.S. 452 (1994), the Supreme Court concluded that the defendant's statement "Maybe I should talk to a lawyer" was not an unequivocal request for counsel. *Id.* at 462. The Court was "unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect *might* want a lawyer." *Id.* (emphasis in original). The Sixth Circuit has repeatedly found similar language too equivocal to amount to an unambiguous request to speak to counsel requiring police to cease their interrogation. *See Cornelison v. Motley*, 395 Fed. App'x 268, 274 (6th Cir. 2010) (concluding that habeas petitioner's comment "What if I want my lawyer present first?" was too ambiguous to require the police to terminate their interrogation); *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) (noting that defendant's statement during police interrogation that "it would be nice" to have an attorney was too ambiguously worded to require police to stop

11

questioning defendant); *United States v. Delaney*, 443 Fed. App'x 122, 130 (6th Cir. 2011) (defendant's statement "I think I should talk to a lawyer, what do you think?" was not an unambiguous request for counsel). The "mere mention" of an attorney or a question about having an attorney is not an unambiguous request for counsel. *United States v. Potter*, 927 F.3d 446, 451 (6th Cir. 2019). It was not an unreasonable application of clearly established Federal law for the state court to conclude that Petitioner did not unambiguously invoke his right to counsel. Habeas relief is denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## V. Conclusion

The petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**SO ORDERED**.

Dated: September 9, 2019

s/ Nancy G. Edmunds
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE